**BRITISH AIRPORTS AUTHORITY,**
**Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF**
**STATE, Defendant.**

**Civ. A. No. 81–1519.**

United States District Court,
District of Columbia.

Nov. 10, 1981.

On Motion To Alter or Amend Judgment
Dec. 22, 1981.

---

Joseph W. Dorn, Martin McNerney, Washington, D. C., for plaintiff.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GESELL, District Judge.

In this Freedom of Information Act case British Airports Authority (BAA) seeks various documents from the Department of State relating to negotiations between the United States Government and the British Government concerning the fees imposed by BAA on airlines for facilities and services at London's Heathrow Airport. BAA is a nongovernmental entity which manages civil aviation airports in the United Kingdom. The United States Government and United States flag airlines have apparently initiated various formal and informal efforts to obtain lower fees from BAA.[1]

A number of documents responsive to BAA's request were released. Thirteen documents remain in dispute, some of which have been withheld in their entirety and some of which have been redacted in part.[2] The Department of State has moved for summary judgment claiming that the material is protected by exemptions (b)(1), (b)(4), or (b)(5), and BAA has cross-moved for

---

1. The Court was informed at oral argument that the two governments are now conducting formal consultations on the fee issues under Article 10 of the Air Services Agreement between the two governments.

2. Initially, 15 documents were in dispute. However, BAA withdrew its requests to the extent that they sought information provided in confidence to the Department of State by BAA or the British Government.

summary judgment. The issues have been fully briefed. The Court heard oral argument and has conducted a careful *in camera* examination of the disputed papers.

■ A threshold issue is presented by BAA's argument that the discussion of each of the withheld materials included in the affidavit of Thomas Ainsworth is an insufficient *Vaughn v. Rosen* index to enable the Court to determine whether the exemptions claimed are proper. Generally speaking, the index is sufficient under present standards. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980); *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir. 1979). It indicates the provenance of each document and its general contents and purpose. With one exception,[3] the index also states the exemption claimed for each deletion and explains why the material should be withheld under that exemption. As indicated, the Court has also conducted an *in camera* inspection of the documents and this review has been a significant aid to the Court in making its *de novo* determination as to whether the materials are exempt as claimed. *See Allen v. CIA*, 636 F.2d 1287, 1298 (D.C.Cir.1980). The Court has received more than sufficient information to discharge its responsibilities under FOIA.

The remaining issue is whether the Department has sustained its burden to justify the exemptions claimed as to each document. The Court finds that, with three exceptions discussed below, the defendant has properly invoked the FOIA exemptions claimed.

■ Four documents are classified and withheld in part under (b)(1) (Nos. 8, 20, 2 and 3).[4] BAA has withdrawn its requests for those portions of the documents which contain information provided in confidence by BAA or the British Government. The plaintiff still seeks informal and formal counterstatements and comments by United States officials on the fee issue and on the British Government's negotiating position. The affidavit of Mr. Ainsworth indicates that the classification procedures prescribed by Executive Order 12,065 were followed. While the documents were originally designated "Limited Official Use" and were only classified following plaintiff's FOIA requests, in view of changed circumstances this delayed classification does not defeat the Department's (b)(1) claims. *Lesar v. United States Dept. of Justice*, 636 F.2d 472, 484 (D.C.Cir.1980). Furthermore, these documents are obviously within the scope of Executive Order No. 12,065 since they relate to United States foreign relations activities. The documents are cables between the State Department and the United States Embassy in London relating to United States comments and strategy with respect to ongoing informal discussions with British officials. Disclosure of the information would be likely to impair the negotiating effectiveness of United States officials and their relations with foreign officials. Under these circumstances, the Department's determination that disclosure could cause damage to national security is reasonable. Document 2[5] also contains information received informally by the United States from a third government. Section 1–303 of Executive Order No. 12,065 states that "[u]nauthorized disclosure of foreign government information . . . is presumed to cause at least identifiable damage to the national security." Thus, all of the Department's (b)(1) claims must be upheld.

■ Portions of documents 1, 2, 3, 4, 8, 11, 12 and 18 are claimed to be deliberative documents exempt under (b)(5). These doc-

---

**3.** Through apparent oversight, Ainsworth's affidavit does not indicate that material was redacted from document 8 under (b)(5) although the Court's *in camera* inspection revealed that this exemption has been properly applied to a portion of that document. The defendant is directed to file a supplemental *Vaughn v. Rosen* index to support the (b)(5) claim for document 8.

**4.** Documents 2 and 3 were retrieved by the Department in response to plaintiff's FOIA request No. 8100239. Unless specifically indicated documents referred to in this Memorandum were retrieved in response to plaintiff's request No. 8003880.

**5.** See footnote 4.

uments reflect the often frank exchange among United States officials and the staff of the United States Embassy in London of comments, draft documents, and strategies relating to the evolving position of the United States Government on the fees charged by BAA. If this material were disclosed information of this type "would not flow freely" among federal officials in the formulation of important government policies. *Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). Accordingly, the Court finds that all of the Department's (b)(5) claims are proper.

▇ Finally, the Department claims that portions of documents 15, 17 and 18 are exempt under (b)(4). In order for information to fall within exemption (b)(4) it must be (a) commercial or financial, (b) obtained from a person outside government, and (c) privileged or confidential. *Gulf & Western Indus., Inc. v. United States*, 615 F.2d 527, 529 (D.C.Cir.1979). Assuming that the latter two requirements have been satisfied the Department's claim fails because the information is not commercial in nature. Not every type of information provided to the government by an entity engaged in commerce falls within (b)(4). *See Getman v. NLRB*, 450 F.2d 670, 673 (D.C.Cir.1971). The material withheld includes the name of an airline and information relating to the strategy of airline companies in negotiating with BAA. This simply cannot be said to be information that falls within the ordinary meaning of the terms "commercial" or "financial." Accordingly, the Department's (b)(4) claims must be rejected. It would be unfortunate if FOIA did not provide more protection for this noncommercial information given in confidence by our citizens to embassy officials abroad. No (b)(5) exemption was claimed and the Court cannot consider the possible applicability of this exemption to these papers.

An appropriate Order is filed herewith.

## On Motion To Alter or Amend Judgment

This Freedom of Information Act case is now before the Court on defendant's motion to alter or amend judgment and plaintiff's opposition thereto. By Order dated November 10, 1981, the Court granted defendant's motion for summary judgment in part but directed the agency to release portions of documents 15, 17 and 18. The Court found that these documents did not contain "commercial or financial" information and were therefore not exempt under (b)(4) as claimed. Defendant has released document 15. However, following the Court's Order, a United States air carrier objected pursuant to 49 U.S.C.A. § 1504 (1981 Supp.) to release of documents 17 and 18 and defendant now claims that as a result of this objection these documents are exempt under (b)(3). In addition, defendant seeks amendment of the judgment with respect to documents 17 and 18 on the ground that they contain deliberative information and are therefore exempt under (b)(5).

▇ The Federal Rules of Civil Procedure grant the Court discretion in ruling on a motion to alter or amend judgment and in the context of a Freedom of Information Act case this discretion should obviously be exercised in a fashion that furthers the goals of the Act. *Cf. Jordan v. United States Department of Justice*, 591 F.2d 753, 779–780 (D.C.Cir.1978). An agency is required to act on a FOIA request in the first instance and to identify any exemptions upon which it relies to withhold any of the material requested. If the agency gives proper and thorough consideration to the disclosability of the materials at this stage the Court and the parties should be able to avoid the inefficiency and unfairness entailed in piecemeal review of possibly relevant exemptions. On the other hand, if any agency could raise new exemptions at any time after a FOIA suit has been filed it might be permitted to gain a tactical advantage over the requester and the agency would suffer no penalty for its negligent handling of a FOIA request. This result would not be consistent with the presumption that all federal records are available to "any person" and the rule that the agency has the burden of establishing the specific exemptions that justify withholding requested information. At the same time, there will undoubtedly be instances where excusable neglect on the part of the agency, *id.* at 780, or a change in circumstances

following initial review of the request, should permit an agency to raise new exemptions after an action has been filed, or even, as in this case, after entry of judgment.

■ Following the Court's Order the defendant contacted the air carriers whose interests would be affected by disclosure of the information contained in documents 15, 17 and 18 to inform them of the Court's ruling. Approximately one week later one United States air carrier submitted to defendant a written objection to release of documents 17 and 18 on the ground that they contained confidentially shared opinions and strategy the release of which would prejudice the formulation of the United States Government position in ongoing negotiations with the British Government and adversely affect the air carrier's competitive position in serving Great Britain. The Federal Aviation Act of 1958, 49 U.S.C.A. § 1504 (1981 Supp.) states in relevant part:

> Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to provisions of this chapter or of any information obtained by . . . the Secretary of State . . . pursuant to the provisions of this chapter stating the grounds for such objection. Any information contained in such application, report, or document, or any such other information obtained by the . . . Secretary of State, shall be withheld from public disclosure by . . . the Secretary of State . . . if disclosure of such information would prejudice the formulation and presentation of positions of the United States in international negotiations or adversely affect the competitive position of any air carrier in foreign air transportation. . . .

The information contained in documents 17 and 18 undoubtedly falls within the scope of this statute. Section 1504 requires the Secretary to withhold information which meets either of the criteria listed in the statute and defendant claims that the air carrier's objection therefore triggers exemption 3, which protects information specifically exempted from disclosure by statute provided

it "leave[s] no discretion on the issue" of disclosability. 5 U.S.C. § 552(b)(3) (1976).

Defendant noted the possible applicability of 49 U.S.C. § 1504 in its motion for summary judgment but did not specifically invoke exemption 3 in refusing to release these documents. In view of the air carrier's subsequent objection it is evident that exemption 3 now applies and should be honored. The better practice is obviously for an agency to inform affected parties of a pending FOIA request so that they can object under § 1504 and the possible applicability of exemption 3 can be resolved prior to the filing of a civil action. Under the circumstances of this case, however, there being no indication that the agency delayed contacting the air carriers in order to gain a tactical advantage or that it was negligent in its handling of plaintiff's FOIA request, the defendant will be permitted to rely on exemption 3 despite its failure to raise this exemption prior to entry of judgment.

In view of the Court's determination that defendant may invoke exemption 3 it is unnecessary to consider whether defendant's failure to raise exemption 5 at an earlier stage in this proceeding bars it from relying on that exemption at this time.

An appropriate form of Order is filed herewith.