Hillsborough-northern judicial district
Nos. 95-802
 96-008

UNION LEADER CORPORATION & a.

v.

NEW HAMPSHIRE HOUSING FINANCE AUTHORITY

December 31, 1997

*Malloy & Sullivan*, of Manchester (*Gregory V. Sullivan* on the brief and orally), for plaintiff Union Leader Corporation.

*Hill & Barlow, P.C.*, of Boston, Massachusetts (*Joseph D. Steinfield* and *Robert A. Bertsche* on the brief, and *Mr. Steinfield* orally), and *Backus, Meyer, Solomon & Rood*, of Manchester (*Jon Meyer* on the brief), for plaintiff Monitor Publishing Co.

*Stein, Volinsky & Callaghan*, of Concord (*Peter G. Callaghan* and *Diane Perin Hock* on the brief, and *Mr. Callaghan* orally), for intervenors Northeast Community Development Group and Stephen M. Duprey.

*Bell & Falk, P.A.*, of Keene (*Arnold R. Falk* on the brief), and *Jane E. Kirtley* of Arlington, Virginia, by brief, for the Reporters Committee for Freedom of the Press, as *amicus curiae*.

Defendant New Hampshire Housing Finance Authority filed no brief.

JOHNSON, J. This consolidated appeal arises from petitions filed by the Union Leader Corporation (Union Leader) and Monitor Publishing Company (Monitor) (collectively the petitioners) seeking to gain access to documents under New Hampshire's Right-to-Know Law, RSA ch. 91-A (1990 & Supp. 1996), pertaining to housing developments financed by the New Hampshire Housing Finance Authority (authority). The intervenors, Northeast Community De-

velopment Group (Northeast) and Stephen M. Duprey, appeal a series of orders of the Superior Court (*Sullivan,* J.), arguing that the court: (1) erred when it ordered the intervenors to prepare a detailed document index pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir 1973), *cert. denied,* 415 U.S. 977 (1974), (*Vaughn* index); (2) arbitrarily and capriciously determined that the intervenors did not comply with its order; (3) impermissibly ordered summary disclosure of numerous documents as a sanction for noncompliance; and (4) erroneously ordered disclosure of certain documents that the court reviewed *in camera.* The intervenors also challenge the court's finding that the authority is subject to the Right-to-Know Law. The Union Leader filed a cross-appeal challenging the trial court's ruling that certain documents were exempt from disclosure. We affirm in part and reverse in part.

In March and April 1995, reporters for the Union Leader and Monitor filed requests pursuant to RSA chapter 91-A with the authority seeking documents pertaining to two housing developments, known as Woodland Green and Saco Woods, which had been partially financed by the authority. Northeast was the developer responsible for both projects, and Duprey is a principal in that firm. When the authority refused to turn over certain documents requested by the petitioners, each filed a petition for injunctive relief with the superior court seeking disclosure of the documents. *See* RSA 91-A:7 (1990). The petitions were consolidated, and the court subsequently allowed Northeast and Duprey to intervene in the litigation.

After many weeks had passed with no discernable progress in the litigation, the Monitor, in July 1995, filed a motion to compel the intervenors to produce a *Vaughn* index of the withheld documents for review by the trial court. As a result, the trial judge ordered the intervenors to produce a *Vaughn* index describing the withheld documents and offering an explanation of why such documents were exempt from disclosure under RSA chapter 91-A. The purpose of the index was to assist the court in determining which of the over 5,000 pages of requested documents should be reviewed *in camera.* While the intervenors did produce an index containing over 478 entries, the court concluded that the descriptions were too general and ordered the intervenors to prepare a second, more detailed index. The trial court warned that if it found the revised index was not in compliance, then the court would order summary disclosure. After the intervenors produced a "Further Memorandum" in early August 1995 to supplement the first *Vaughn* index, the Monitor moved to compel summary disclosure. In response, the intervenors filed a

third version of the index, entitled a "Revised Further Memorandum." The court found that the intervenors had, for the most part, failed to comply with its order, and consequently ordered summary disclosure of most of the indexed documents. The court did review, *in camera*, a series of documents it found to be adequately described in the *Vaughn* index. In October 1995, the court issued a final order requiring disclosure of certain documents and finding the remainder exempt. The consolidated appeals and cross-appeal followed.

## I. Standard of Review

Part I, article 8 of the New Hampshire Constitution provides that "the public's right to access to governmental proceedings and records shall not be unreasonably restricted." The Right-to-Know Law provides that "[e]very citizen . . . has the right to inspect all public records . . . except as otherwise prohibited by statute or RSA 91-A:5." RSA 91-A:4, I (1990). It was enacted "to ensure . . . the greatest possible public access to the actions, discussions and records of all public bodies." RSA 91-A:1 (1990).

■ The interpretation of the Right-to-Know Law is to be decided ultimately by this court. *See Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 475, 686 A.2d 310, 312 (1996). We resolve questions regarding the law with a view to providing the utmost information, *see Menge v. Manchester*, 113 N.H. 533, 537, 311 A.2d 116, 118 (1973), in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents. *See Lodge v. Knowlton*, 118 N.H. 574, 575, 391 A.2d 893, 894 (1978). Thus, while the statute does not provide for unrestricted access to public records, *see Orford Teachers Assoc. v. Watson*, 121 N.H. 118, 120, 427 A.2d 21, 23 (1981), we broadly construe provisions favoring disclosure and interpret the exemptions restrictively. *See, e.g., Society for Protection of N.H. Forests v. Water Supply and Pollution Control Comm'n*, 115 N.H. 192, 194, 337 A.2d 788, 789 (1975).

We also look to the decisions of other jurisdictions, since "other similar acts, because they are *in pari materia*, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved." *Wilson v. Freedom of Information Com'n*, 435 A.2d 353, 359 (Conn. 1980); *see Board of Trustees v. Freedom of Info. Com'n*, 436 A.2d 266, 270 (Conn. 1980); *cf. Lodge*, 118 N.H. at 576-77, 391 A.2d at 895 (this court followed federal test in absence of legislative standard for police investigation file).

## II. State Agency

The Right-to-Know Law applies to "[a]ny board or commission of any state agency or authority." RSA 91-A:1-a, III (1990); *see Lodge*, 118 N.H. at 575, 391 A.2d at 893. The intervenors argue that the authority is not subject to the Right-to-Know Law because it is a private entity that functions independently of the State. "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law, and we accordingly look to the plain meaning of the words used." *Union Leader Corp. v. City of Nashua*, 141 N.H. at 475, 686 A.2d at 312. Here, however, we are confronted with an entity that is not easily characterized as solely private or entirely public. While the declared intent of the statute is to create a "*state* housing finance authority," *see* Laws 1981, 466:1, X (emphasis added), it is also a "body politic and corporate having a distinct legal existence separate from the state and not constituting a department of state government." RSA 204-C:2 (1989). Moreover, in many of its day-to-day operations, the authority functions independently of the State. *See* RSA 204-C:8 (1989 & Supp. 1996), :9, :26, :44, :52 (1989).

■ In classifying the authority, we recognize that "any general definition can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of government done," *Bradbury v. Shaw*, 116 N.H. 388, 390, 360 A.2d 123, 125 (1976) (quotation and brackets omitted), and that we must "construe[] the right-to-know law to further the statutory objectives of increasing public access to governmental proceedings." *Orford Teachers Assoc.*, 121 N.H. at 120, 427 A.2d at 23. Here, the balance favors a finding that the authority is subject to the Right-to-Know Law. The authority was created "to encourage the investment of private capital . . . through the use of public financing." Laws 1981, 466:1, X. It is deemed "to be a *public instrumentality* and the exercise by the authority of the powers conferred by [RSA chapter 204-C] shall be deemed and held to be the performance of *public* and *essential governmental* functions of the state." RSA 204-C:2 (emphasis added). It is empowered to "work with *other* state and federal agencies." RSA 204-C:8, V (1989) (emphasis added). The authority performs the essential government function of providing safe and affordable housing to the elderly and low income residents of our State. *See* Laws 1981, 466:1, X. Accordingly, we hold that it is subject to the Right-to-Know Law. *Cf. Doe v. Sears*, 263 S.E.2d 119, 121-22 (Ga.), *cert. denied*, 446 U.S. 979 (1980); *Bradbury*, 116 N.H. at 390, 360 A.2d at 125 (holding that "committee's involvement in governmental programs and decisions

brought it within the scope of the right-to-know law"); *A.R. Bldg Co. v. Pa. Housing Finance*, 500 A.2d 943, 944 (Pa. Commw. Ct. 1985).

*III. Vaughn Index*

The intervenors next argue that the court improperly abdicated its responsibility to review *in camera* the thousands of pages of documents at issue when it ordered preparation of a *Vaughn* index. The *Vaughn* index is a procedure developed by the federal courts to effectuate the goal of broad disclosure of public documents and assist trial courts in cases involving a large number of documents. *See Vaughn*, 484 F.2d at 823-25. It has enjoyed almost "universal" acceptance. *See Wiener v. F.B.I.*, 943 F.2d 972, 978 n.5 (9th Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992). Generally, a *Vaughn* index will include a general description of each document withheld and a justification for its nondisclosure. *See Church of Scientology Intern. v. U.S. Dept. of Justice*, 30 F.3d 224, 228 (1st Cir. 1994). The index safeguards the adversary process in a setting where one party, the party resisting disclosure, has exclusive control of vital information:

> It forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Id.* (quotation and brackets omitted).

The intervenors argue that our opinion in *Petition of Keene Sentinel*, 136 N.H. 121, 130, 612 A.2d 911, 917 (1992), makes *in camera* review of all documents mandatory, even in large document cases such as this. We disagree. It is true that we stated in *Keene Sentinel* that "[t]he court shall separately examine each document in question *in camera* . . . on the record" to determine whether disclosure is appropriate. *Keene Sentinel*, 136 N.H. at 130, 612 A.2d at 917. We also stated, however, that "[w]hen appropriate, the document's subject matter . . . can be described in general terms such that persons objecting to closure can present an adequate argument to the court." *Id.*

We hold that the trial court did not abdicate its responsibilities under *Keene Sentinel* when it ordered preparation of a *Vaughn* index. The overriding aim of the *Vaughn* index is to maximize disclosure of public documents — a purpose consistent with the aims of the Right-to-Know Law. *Cf. Union Leader Corp. v. City of Nashua*, 141 N.H. at 476, 686 A.2d at 312. A *Vaughn* index is

particularly useful in large document cases. While in theory the court could "examine a document in sufficient depth to test the accuracy of a government characterization, . . . . where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization." *Vaughn*, 484 F.2d at 825.

Furthermore, *Keene Sentinel* emphasizes that the burden of proof rests with the party seeking nondisclosure. *Keene Sentinel*, 136 N.H. at 128, 612 A.2d at 914-15. Requiring *in camera* inspection of all documents in a large document case would undermine this holding since it would shift the burden of proof from the party resisting disclosure, *see Union Leader Corp. v. City of Nashua*, 141 N.H. at 476, 686 A.2d at 313, to the petitioners, who with limited knowledge must argue that a document is not exempt, *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 984 (3d Cir. 1981), while straining the resources of the court, which is forced to "wad[e] through" potentially voluminous documents to determine whether an exemption applies. *Powell v. United States Dept. of Justice*, 584 F. Supp. 1508, 1512 (N.D. Cal. 1984). Consequently, we hold that in large document cases, where the imbalance of information distorts the adversary process such that neither the plaintiffs nor the court can effectively review disputed evidence, use of a *Vaughn* index is entirely appropriate.

The intervenors next argue that even if use of a *Vaughn* index was appropriate in this case, the superior court's finding of noncompliance was erroneous. We disagree. We review *de novo* "whether the [intervenor's] explanation was full and specific enough to afford the [petitioners] a meaningful opportunity to contest, and the [superior] court an adequate foundation to review, the soundness of the withholding." *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995) (quotation omitted); *see Church of Scientology Intern.*, 30 F.3d at 228. For an entry in the index to be sufficient, it must "provide the connective tissue between the document, the deletion, the exemption and the explanation." *Davin*, 60 F.3d at 1051 (quotation omitted). "Specificity is the defining requirement of the *Vaughn* index, [and] [u]nless the agency discloses as much information as possible without thwarting the claimed exemption's purpose, the adversarial process is unnecessarily compromised." *Wiener*, 943 F.2d at 979 (quotations, citations, and brackets omitted).

The intervenors "Further Memorandum" included 478 entries purporting to explain why the nondisclosed documents were exempt from disclosure. The trial court found that most of the entries

lacked sufficient legal and factual information to enable either the court or the petitioners to determine why the documents should be exempt from disclosure. We have reviewed each disputed entry individually in order to evaluate whether they contained the hall-marks of an adequate *Vaughn* index; namely, whether the entry contains "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Church of Scientology Intern.*, 30 F.3d at 231 (quotations and emphasis omitted); *see, e.g.*, *King v. U.S. Dept. of Justice*, 830 F.2d 210, 225 (D.C. Cir. 1987) (goal of a *Vaughn* index is descriptive accuracy).

■ Our review reveals that the trial court correctly found the disputed entries inadequate. As the intervenors themselves noted in their brief, "the court wanted the intervenors to state their factual and legal bases for their position." The disputed entries fail to meet this standard. These entries, while stating the legal bases upon which the exemptions are claimed, fail to give the slightest factual reference that would enable the court to determine whether the claimed legal exemption applies. For example, entry 187 while listing a number of legal bases upon which the document could be excluded, states only that it is a "NHHFA memorandum from Richards to Monier dated 1/10/89 discussing issues and proposing solutions." Entry 220 states merely that it is a "[h]andwritten memo dated 3/27/90" before listing a series of legal claims upon which this unspecified "handwritten memo" should be deemed exempt. Entry 224 states merely that it is a "[l]etter of a financial institution dated 6/7/88 to NCDG." These bare assertions do little to instruct the court as to why the documents may contain information that is exempt from disclosure. *Cf. Church of Scientology Intern.*, 30 F.3d at 231 (entries including supporting affidavits inadequate because they "contain only general and conclusory assertions," and make "only broad statements essentially explaining that the documents were withheld because they contain a type of information generally protected by that particular exemption"). Simply put, "the descriptions for many of the documents are too cursory to permit debate, or an informed judgment, about whether they properly may be withheld," *id.* at 230, and the intervenors "fell short of providing the [petitioners] with a meaningful opportunity to challenge a substantial number of [their] unilateral decisions to withhold documents." *Id.* at 233 (quotation omitted).

Nonetheless, the intervenors argue that the trial court's findings were erroneous because the "trial court had no basis for deciding

whether the index did in fact fairly describe the document" until it conducted an *in camera* review. *"[I]n camera* examination is not a substitute for the [intervenor's] obligation to provide detailed public indexes and justifications whenever possible. Rather it will . . . assist the [courts] as a supplement to the detailed public record and adversary testing of [their] justifications for withholding information." *Lykins v. United States Dept. of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984).

The intervenors also complain that the trial court erred because it was "inconsistent and confusing in identifying its *Vaughn* index requirements." This assertion is without merit. The court's order regarding preparation of the *Vaughn* index stated that "[t]he intervenors are ordered to provide to the court . . . an itemized, detailed explanation in connection with each document that they claim is exempt from production," and instructed the intervenors to consult *Vaughn* and its progeny. The order set forth specific requirements for each entry. We note that the intervenors conceded in their brief that they understood that the court wanted them "to state their factual and legal bases for their position," a task they largely failed to accomplish.

■■ The intervenors also argue that it was improper for the court to order summary disclosure of all documents inadequately described by the *Vaughn* index. We disagree. The judicial remedy of summary disclosure may be appropriate where a public agency has improperly withheld agency records, *cf. Coastal States Gas Corp. v. Department of Energy*, 644 F.2d at 974, including when an agency has failed, after adequate notice, to supply the court with a proper *Vaughn* index, *see Church of Scientology Intern.*, 30 F.3d at 240. We find that this remedy is also available to trial courts where a party, who controls the documents in question but is not the public agency, fails to supply an adequate *Vaughn* index. When a party violates a statute or court rule, it is within the discretion of the trial court to impose a reasonable sanction. *Cf. Breagy v. Stark*, 138 N.H. 479, 483, 642 A.2d 329, 333 (1994). Imposition of heavy penalties for violating the Right-to-Know Law may be appropriate to ensure the broadest possible access to public records, *cf. Hardiman v. Dover*, 111 N.H. 377, 380, 284 A.2d 905, 907 (1971), and thus summary disclosure is one remedy available to trial courts where a non-public body has failed to reasonably comply with an order for a *Vaughn* index. Here, the intervenors were given more than one opportunity to comply with the court's order, *cf. Powell*, 584 F. Supp. at 1515 n.5, and were informed that noncompliance would result in summary disclosure.

We conclude that in this case the trial court did not abuse its discretion by ordering summary disclosure.

*IV. In Camera Review*

The final issue raised by the intervenors, and the only issue raised by the Union Leader, is whether the trial court properly ruled upon the documents it reviewed *in camera.* The Right-to-Know Law provides that "[r]ecords pertaining to internal personnel practices; confidential, commercial, or financial information; . . . and other files whose disclosure would constitute invasion of privacy" are exempt from disclosure. RSA 91-A:5, IV (Supp. 1996). The trial court reviewed *in camera* several hundred pages of documents grouped into seventeen exhibits to determine whether they were discoverable pursuant to RSA 91-A:5, IV. While both the Union Leader and the intervenors now dispute the trial court's findings, their legal arguments concern the proper interpretation of the exemptions for "confidential, commercial, or financial information," and for "other files whose disclosure would constitute invasion of privacy."

### A. *"Confidential, Commercial, or Financial Information"*

■ The parties' arguments require us to define with some specificity the statutory exemption for "confidential, commercial, or financial information." RSA 91-A:5, IV. Our statute, unlike its federal counterpart, which exempts "commercial or financial information obtained from a person *and* privileged or confidential," 5 U.S.C. § 552(b)(4) (1982) (emphasis added), is not expressly conjunctive. *See National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765, 766 (D.C. Cir. 1974) *(National Parks I).* We have interpreted our statute, however, as requiring analysis of both whether the information sought is "confidential, commercial, or financial information," *and* whether disclosure would constitute an invasion of privacy. *See Perras v. Clements,* 127 N.H. 603, 605, 503 A.2d 843, 844 (1986); *Menge,* 113 N.H. at 537-38, 311 A.2d at 119; *cf. Mans v. Lebanon School Bd.,* 112 N.H. 160, 162, 290 A.2d 866, 867 (1972) ("Subsection IV means that financial information and personnel files and other information necessary to an individual's privacy need not be disclosed."). Federal precedent is instructive in defining the terms "confidential, commercial, or financial." *See Wilson,* 435 A.2d at 359; *cf. Lodge,* 118 N.H. at 577, 391 A.2d at 895. An expansive construction of these terms must be avoided, since to do otherwise would "allow[] the exemption to swallow the rule and is inconsistent with the purposes and objectives of [RSA chapter 91-A]." *Mans,* 112

N.H. at 162, 290 A.2d at 867. Furthermore, the asserted private confidential, commercial, or financial interest must be balanced against the public's interest in disclosure, *id.*, since these categorical exemptions mean not that the information is *per se* exempt, but rather that it is sufficiently private that it must be balanced against the public's interest in disclosure. *See Union Leader Corp. v. City of Nashua,* 141 N.H. at 475-76, 686 A.2d at 312; *Brent v. Paquette,* 132 N.H. 415, 426-27, 567 A.2d 976, 983-84 (1989); *Mans,* 112 N.H. at 162, 290 A.2d at 867; *cf. Washington Post v. U.S. Dept. of Health, Etc.,* 690 F.2d 252, 261 (D.C. Cir. 1982). *But cf. Union Leader Corp. v. Fenniman,* 136 N.H. 624, 627, 620 A.2d 1039, 1041 (1993) (balancing test inappropriate where legislature has plainly determined that certain documents are categorically exempt under RSA 91-A:5, IV).

■■ We begin by examining the words of the statute, giving them their plain meaning whenever possible. *Union Leader Corp. v. Fenniman,* 136 N.H. at 626, 620 A.2d at 1040; *see Public Citizen Health Research Group v. F.D.A.,* 704 F.2d 1280, 1290 (D.C. Cir. 1983). The terms "commercial or financial" encompass information such as "business sales statistics, research data, technical designs, overhead and operating costs, and information on financial condition." *Landfair v. United States Dept. of Army,* 645 F. Supp. 325, 327 (D.D.C. 1986); *see Comstock Intern. v. Export-Import Bank of U.S.,* 464 F. Supp. 804, 806 (D.D.C. 1979) (loan agreements are financial or commercial information). Whether documents are commercial depends on the character of the information sought. Information is commercial if it relates to commerce. *See American Airlines, Inc. v. Nat. Mediation Bd.,* 588 F.2d 863, 870 (2d Cir. 1978). Thus "information may qualify as 'commercial' even if the provider's . . . interest in gathering, processing, and reporting the information is noncommercial." *Critical Mass Energy Project v. N.R.C.,* 830 F.2d 278, 281 (D.C. Cir. 1987), *vacated on other grounds,* 975 F.2d 871 (D.C. Cir. 1992), *cert. denied,* 507 U.S. 984 (1993). Conversely, not all information generated by a commercial entity is "financial or commercial." *See British Airports Authority v. U.S. Dept. of State,* 530 F. Supp. 46, 49 (D.D.C. 1981).

■ To best effectuate the purposes of our Right-to-Know Law, whether information is "confidential" must be determined objectively, and not based on the subjective expectations of the party generating it. *See Washington Post,* 690 F.2d at 268; *cf. 9 to 5 Organ. v. Board of Governors of Fed. Res.,* 721 F.2d 1, 9, (1st Cir. 1983). "To determine whether [records] . . . are exempt as confidential, the benefits of disclosure to the public must be weighed against the

benefits of non-disclosure to the government." *Chambers v. Gregg*, 135 N.H. 478, 481, 606 A.2d 811, 813 (1992). We find instructive the standard test employed by the federal courts: To show that information is sufficiently "confidential" to justify nondisclosure, the party resisting disclosure must prove that disclosure "is likely: (1) to impair the [State's] ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 677-78, (D.C. Cir. 1976) (quotations omitted) (*National Parks II*).

We do not, however, adopt this as the exclusive test for "confidential." *See 9 to 5 Organ.*, 721 F.2d at 9-10. In this context, the federal test is instructive simply because it illustrates that "[t]he emphasis . . . should be placed on the potential harm that will result from disclosure, rather than simply promises of confidentiality, or whether the information has customarily been regarded as confidential." *Id.* at 10.

### B. *Privacy Exemption*

 The intervenors argue on appeal that disclosure of many of the disputed exhibits would constitute an unwarranted intrusion into personal or private affairs. When exemption is claimed on privacy grounds, "we examine the nature of the requested document or material and its relationship to the basic purpose of the Right-to-Know Law." *Union Leader Corp. v. City of Nashua*, 141 N.H. at 476, 686 A.2d at 312. The party resisting disclosure "bears a heavy burden to shift the balance toward nondisclosure." *Id.* at 476, 686 A.2d at 313. Furthermore, "[t]he motivations of . . . any member of the public . . . are irrelevant to the question of access." *Petition of Keene Sentinel*, 136 N.H. at 128, 612 A.2d at 915.

The obvious public purpose that may be served by disclosure of the disputed exhibits is to increase public knowledge about how the authority operates.

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the] statutory purpose [of the Right-to-Know Law]. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct.

*Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 773 (1989); *see Union Leader Corp. v. City of Nashua*, 141 N.H. at 477, 686 A.2d

at 313. Thus, our review must necessarily focus on whether the intervenors have shown that the information sought would not inform the public about the authority's activities with respect to the Saco Woods and Woodland Green developments, or that a valid privacy interest, on balance, outweighs the public interest in disclosure. *See Department of Defense v. F.L.R.A.*, 510 U.S. 487, 497 (1994); *Brent*, 132 N.H. at 427, 567 A.2d at 983-84 (balancing test used to determine whether public inspection would constitute an invasion of privacy).

### C. Contested Rulings

We now determine whether the disputed exhibits were properly exempted or disclosed by the trial court. When reviewing exemptions from the Right-to-Know Law, we balance the public's interest in disclosure against the intervenors' interest in nondisclosure. *Union Leader Corp. v. City of Nashua*, 141 N.H. at 475-76, 686 A.2d at 312. "In the absence of disputed facts, we review the trial court's balancing the public's interest in disclosure and the interests in nondisclosure *de novo.*" *Id.* at 476, 686 A.2d at 312.

#### Exhibit 1

■■■ The Union Leader challenges the court's finding that this exhibit, consisting of a market analysis of potential condominium sales at Saco Woods, is exempt as commercial information. While the information contained in this exhibit is of a commercial nature, it is not exempt unless the intervenor's competitive interest in protecting the information from disclosure outweighs the public's interest in disclosure. We find that disclosure is warranted. The negative competitive impact of disclosing market information regarding potential condominium sales that was gathered in 1987 is blunted by time, *see Comstock Intern.*, 464 F. Supp. at 810, and does not, on balance, outweigh the public interest in understanding the market conditions that gave rise to the authority's role in the Saco Woods project. We accordingly reverse the ruling of the trial court and order disclosure of the documents contained in this exhibit (pages 1-45).

#### Exhibit 10

■■■ The Union Leader next challenges the finding that certain financial statements included in exhibit 10 are exempt as financial information. The documents in this exhibit are financial in that they contain balance sheets and income statements of the intervenors and related corporations for the years 1985 through 1989. On

balance, we believe that the public's interest in disclosure outweighs the intervenor's interest in keeping the documents private. These documents were provided in conjunction with the loans advanced by the authority, and as such, shed additional light on two large transactions involving a public agency. The benefit, in terms of understanding the conduct of the authority, that the public would derive from review of these documents outweighs the intervenors' interest in keeping financial data, most of which was generated a decade ago, confidential. *Cf. id.* We reverse the trial court's ruling with respect to these documents and order them disclosed (pages 425-433, 1252-1271, 1272-1283, 1284-1293, 1294-1309, 1310-1321, 1322-1341, 1342-1350, 1351-1372, 1373-1393, 1394-1414, and 1760-1781).

■■■ The intervenors challenge the ruling that commercially generated credit reports are not exempt from disclosure. This information is commercial and financial because it includes credit history and financial statistics, and was generated for use by creditors and other parties in the course of conducting their business affairs. While even commercially generated credit reports have been found to be exempt, *see Benson v. General Services Administration*, 289 F. Supp. 590, 594 (W.D. Wash. 1968), *aff'd*, 415 F.2d 878 (9th Cir. 1969), in this case, the balance tips in favor of disclosure. The public interest in disclosure of this data is the same as set forth in the preceding paragraph. The intervenors' interest in keeping this information exempt is slight because, as the trial court correctly found, "the reports . . . are generally readily accessible to many entities which subscribe to various credit reporting agencies." Therefore, we affirm the trial court's ruling with respect to these documents (pages 434-456 and 1574-1584).

*Exhibit 12*

■■■ The intervenors challenge the court's finding that a letter of credit issued at the request of Northeast by another financial institution is not exempt. The intervenors assert that the public interest in reviewing documents pertaining to the Saco Woods and Woodland Green transactions does not apply to the letter of credit because it "contain[s] information regarding the intervenors' financial relationships with third parties, not the housing authority . . . [and] reveal[s] nothing about the terms of any transaction involving the housing finance authority." This is simply incorrect. The authority is the *named beneficiary* of this letter of credit, which was issued in conjunction with the Woodland Green project. Accordingly, the

public interest in disclosure outweighs the intervenors' interest in nondisclosure, and we affirm the trial court's ruling with respect to the letter of credit (pages 651-652).

 The Union Leader challenges the trial court's determination that a "construction finance activity sheet" and financial projections pertaining to the Saco Woods development were exempt as financial information. This information falls within the statutory exemption for financial information because it contains financial data concerning the Saco Woods development. We find, however, that on balance this information must be disclosed. The "construction finance activity sheet" details payments made on a two million dollar loan extended by the authority, while the financial projections discuss projected gains or losses on the Saco Woods loan under five different scenarios. We disagree with the trial court that the public interest in overseeing the financial activities of the authority does not prevail because disclosure "would subject the intervenors to unfair competition as the information would reveal the intervenors' financing strategy and thought process." This information pertains solely to the Saco Woods project and repayment sources for that loan based on *then existing* market conditions. Accordingly, we reverse the trial court's ruling and order disclosure of these documents (pages 4592-4593 and 4649-4650).

*Exhibit 13*

 The Union Leader challenges the court's determination that information contained in columns entitled "rent/credit" and "fees" on a list of scheduled closings was exempt. The "rent/credit" column sets forth the amount of rent the developer could have collected on the unit, and the amount of the cash down payment each purchaser would bring to the closing. The "fees" column sets forth brokerage, referral, or "incentive" fees to be paid on the sale. We hold that this information is not exempt from disclosure. This is financial information within the meaning of the statute because it includes business sales statistics regarding the Saco Woods development. However, we believe the public interest in disclosure is greater than the intervenors' interest in keeping the information confidential because this information was provided to the authority and was used to monitor the progress of the loan. We reverse the determination of the trial court that the information listed under the "rent/credit" and "fees" columns be redacted before disclosure of page 4594 and order disclosure.

*Exhibit 14*

▮ The intervenors challenge the court's finding that a development agreement and construction loan agreement between Northeast, the authority, and private lenders are not exempt. We find that even if the information contained in this exhibit qualifies as confidential, commercial, or financial information, the public interest in disclosure mandates a finding that the information is not exempt. The authority was a named party in both agreements, and the trial court correctly found that there is a "strong public policy interest in disclosing to the public the terms of such a large transaction to which a public entity is a party" that overrides the intervenors' interest in nondisclosure. The intervenors argue that because one of the exhibits to the development agreement involves an "attorney in fact agreement" between Northeast and a "third party," the entire exhibit is exempt. However, this attorney in fact agreement was an attachment to the development agreement between the authority, Northeast, and the so-called "third party," and as such is an integral part of the challenged document. We affirm and order pages 461-494 and 622-650 disclosed.

*Exhibit 15*

▮ The intervenors challenge the court's finding that this exhibit, containing a series of personal guarantees granted to the authority by partners of Northeast, is not exempt. The federal courts have recognized that while

> personal financial information *may* implicate privacy concerns *insofar* as it contains embarrassing disclosures or involves sufficiently intimate details, . . . even those cases do not say that embarrassing personal financial information *is* exempt . . . only that such information is sufficiently private so that it must be balanced against disclosure interests to determine if the invasion of privacy is clearly unwarranted.

*Washington Post*, 690 F.2d at 262 (quotations and citations omitted). We affirm and order this entire exhibit disclosed (pages 388-395, 396-403, and 413-424) because the guarantees of the partners of Northeast were an integral part of the financing arrangements between Northeast and the authority. Given the strong public interest in understanding the terms of a series of large transactions involving the authority, the balance tips in favor of disclosure.

*Exhibit 16*

■ The intervenors challenge the court's ruling that a letter from Northeast to the authority containing market and price information is not exempt. This letter discusses the details of negotiations between the authority and the intervenors with respect to a then pending "no points, no interest construction loan" to be extended by the authority to Northeast. Because it sheds light on the activities of the authority, its disclosure would further the essential purpose of the Right-to-Know Law. *See Union Leader Corp. v. City of Nashua*, 141 N.H. at 477, 686 A.2d at 313. On balance, the public interest in obtaining information about favorably priced loans extended by the authority outweighs the intervenors' interest in keeping private pricing and marketing information developed in 1986. We are not persuaded by the intervenors' argument that we should recognize a "decreased public benefit in learning decade old marketing and pricing information" (quotations omitted). The public benefit from disclosure does not depend solely on the marketing information itself, but rather in the *process* used and considerations made by the authority in negotiating the terms of a loan. Accordingly, we agree with the trial court and order disclosure of the letter (pages 611-613).

In sum, we affirm all of the rulings of the trial court in this case with the exception of four of the exhibits reviewed *in camera*, exhibit 1 (pages 1-45), exhibit 10 (pages 425-433, 1252-1271, 1272-1283, 1284-1293, 1294-1309, 1310-1321, 1322-1341, 1342-1350, 1351-1372, 1373-1393, 1394-1414, and 1760-1781), exhibit 12 (pages 4592-4593 and 4649-4650), and exhibit 13 (the columns entitled "rent/credit" and "fees" on page 4594), which we order disclosed. Accordingly, we remand for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; remanded.*

BRODERICK, J., did not sit; the others concurred.